GAMMONS et al. v. CAPLAIN et al.

(Circuit Court of Appeals, Second Circuit. January 11, 1916.)

No. 150.

PATENTS ☞328—VALIDITY AND INFRINGEMENT—MACHINE FOR SEWING SWEAT-BANDS INTO HATS.

The Gammons patent, No. 747,963, for a machine for sewing sweatbands into hats, claim 4, was not anticipated and discloses patentable invention; also *held* infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by W. P. Gammons, Jr., and F. W. Cole, Incorporated, against Samuel W. Caplain and Hyman Goldman, copartners as Caplain & Goldman. Decree for complainants, and defendants appeal. Affirmed.

The following is the opinion of Hough, District Judge:

Final hearing in equity. Action on patent 747,963, granted December 29, 1903, to Gammons et al., for a machine for sewing sweatbands into hats. Defendants are alleged to infringe claims 4 and 7, by using a machine made under patent to Knight & Bauer, 1,138,669, dated May 11, 1915.

The art of sewing sweatbands in hats by machinery is confessedly not new; in it there seems to be no room for a pioneer invention. Accordingly plain-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tiffs do not profess to have wrought a mechanical revolution, nor to be entitled to the widest range of equivalents. A machine for this purpose is wanted only by large manufacturers, and it must be as simple as is consistent with accuracy and speed, for the machine is ordinarily operated by workers with no mechanical education. It would be a waste of effort to describe in detail the organization either of the type of machine under consideration or of the special combinations used by the parties hereto. The arrangement and correlation of parts is complex, and yet so easily seen in mechanical drawings, that no words of mine can make them clearer, while the questions upon which decision herein depends, are easily stated without any preface of technical description.

There is no mechanical subdivision of plaintiffs' machine which cannot be found in a device of the prior art, doing the same thing that it does for plaintiffs, and contributing to the same result as they seek for. But it does not follow that the elements of claim [1] are therefore old,—in any true sense of that word.

Feed and presser wheels, hat supports and presser arms, needles and needle ways, and also adjustments for all these machine parts, were known; but a *vertically adjustable* feed wheel, in combination with an adjustable hat support, and a presser arm (bearing its appropriate wheel) movable both vertically and horizontally, is not only new in combination, but in some of its elements. As this has been substantially admitted by defendants' expert (Flint, cross-question 230) I need dwell upon it no further.

The merit of the plaintiffs' organization is its quickness in operation—obtained principally by the double movement of the presser arm—without loss in accuracy; the adjustability of both hat support and feed wheel being obtained by visible and easily handled parts. The necessity or reason for adjustability has, I think, an important bearing on this case. In all the sewing machines brought to my attention herein, the needle is (so to speak) a fixed point; the rest of the apparatus moves or may move in order to get work to the needle, which is the ultimate worker.

Presser and feed wheels, hat support and needle way, must be so correlated or arranged with reference to each other that the needle will pass at just the proper depth through the edge of felt projecting from the narrow passage between the two wheels, and after piercing the felt will truly enter the needle way, which in the organization of both plaintiffs and defendants is on the doubly movable presser arm. Not all hats are of the same thickness or quality of felt, and therefore do not under identical conditions present the same kind of edge; nor will any frequently moved and intentionally movable apparatus of bolts, shafts, nuts, etc., always remain true under the strain of operation. It follows that any serviceable machine of this kind must have means provided for readjusting the parts in relation to the needle, as change in material sewed or wear and tear requires.

Since the needle way is upon the presser arm, it is evident that the relation of that element to the needle can be meddled with only by skilled men; therefore the natural adjustments for operator or ordinary mechanics are by and through hat support and feed wheel, which must always coact with reference to the needle, in order to produce at the right place (a very small place) the felt edge for the needle.

---

[1] Claims in suit are as follows:

4. In a hat-sewing machine, a casing, a feeding wheel, means for vertically adjusting said feeding wheel, an adjustable hat support, a horizontally and vertically movable presser arm provided with a wheel engaging the face of the feeding wheel, a horizontal reciprocating needle, and a needle way above the presser wheel to receive the needle, substantially as set forth.

7. In a hat-sewing machine, a casing, a feeding wheel, a semicircular hat support, a presser arm provided with a presser wheel, the presser wheel acting against the serrated face of the feeding wheel, a horizontally reciprocating needle, a loop taker traveling obliquely across the path of the needle and adapted to carry the loop, a block on the presser arm provided with a needle way and a guide for the sweat band, and a nose on one side of the block guiding the fold and having a cord and leather guide, substantially as set forth.

Plaintiffs effect this result by adjustable feed wheel and hat supports, and *both* must be adjustable, unless the machine is to lose efficiency; and the. same comment is obvious as soon as defendants' organization is understood. But it is not necessary that both feed wheel and hat support shall be alike easily and quickly adjusted, and in plaintiffs' machine it is the feed wheel whose position can be changed by the operator, and the hat support that requires the presence of a workman with a screwdriver; but no such detail is introduced into the claims. The fourth claim reads with ease upon defendants' apparatus, if (as is vigorously denied) it contains a vertically adjustable feed wheel. If this wheel is not vertically adjusted, it has no adjustment[2] at all, and is (as above shown) an inferior device, in theory at least.

Counsel assert that defendants' feed wheel and needle are by intention in "permanent fixed relation." This would be true if machines never got out of order, and needed no adjustment or readjustment; but, when the Exhibit Defendants' Machine is examined, the feed wheel is found in the position determined by the assembling mechanic, and fixed by a sleeve with a hexagon top threaded upon a bracket and provided with a set screw. This construction fairly justifies the comment made that the plea of so expensive a device "being merely a convenience in assembling is not worthy of serious consideration." In short, defendants' feed wheel ought to be adjustable, perhaps not often, nor easily, but still capable of adjustment, for the benefit of the machine; it is as matter of fact so capable, therefore I believe it was intended to be adjustable. The truth is defendant has simply transferred the easy, usual, operator's adjustment from feed wheel to hat support, and the slower mechanic's adjustment from hat support to feed wheel; as the claims are drawn this obviously is insufficient to avoid infringement.

As is usual in litigation over patents of a crowded art, defendants have laid before me a portentous list of old inventions, for purposes to be inferred from experience, rather than understood from pleadings and evidence. After Mr. Flint's admission above referred to, one might be justified in relying upon the presumption of invention attaching to the grant, and passing them by altogether. One reference, honestly relied on, is better than a hundred from which may be culled here one idea and there another, in the hope that invention may be denied to any compound or combination of the same. The only legitimate use of such a multitude of old patents is to impress upon the technical ignorance of the court the small remaining field of invention. This last impression I acknowledge, and have, it is thought, not gone beyond the narrowest limits of mechanical equivalence.

As to anticipation one statement of brief needs comment. Richard, 252,799, is for a hat sweat sewing machine, and it is said that Richard's organization is that of the fourth claim in suit, "except only this hat guide"—i. e., hat support. It is possible (after a fashion), to sew on Gammons' machine without a guide; therefore it is argued that the addition of a guide is aggregation not invention. The premises of this conclusion are false. Richard's organization is not Gammons', unless a man with a wooden peg for a leg is physically organized as is the same man after substituting for his peg a modern artificial limb. But, further, I cannot agree that adding to Richard's machine a hat support which performs a function in co-ordination with the old elements is aggregation.

There is one further style of argument here advanced, and expected, viz. that plaintiff's patent must be restricted to the exact form shown, wherefore defendants rotatable hat support, and transference of place of ordinary adjustment from feed wheel to hat support, plus the change of place of impact of feed on hat, prevent infringement. These arguments seem to me to mistake accidents for substance; the patent contains claims (not in suit) that could be escaped in the way suggested, but in claim 4 plaintiffs patented a combination of parts which function in a certain definite manner, and do so by co-ordination. That combination is new—a fact which disposes of the argument.

Finally, defendants appeal to the file wrapper, and there discover what is

---

[2] This word is used as meaning the intended relative positioning of the parts of a finished product; not an original and unchangeable arrangement made in manufacture.

called in argument a "disclaimer" of any structure wherein the "folding and feeding" of the hat are not done by "one element" alone, viz. the feed wheel. It is I think true that the examiner pressed the patentee pretty hard on this point, and was wrong in so doing in my opinion. Yet he passed claims (in suit) containing no such limitation, and in so doing he was (perhaps inadvertently) in my opinion right. Plaintiffs may take a decree on the fourth claim.

The seventh claim is one of those above referred to, which are so drawn as to greatly restrict the scope of the combination shown. Even if the words "semicircular hat support" do not let defendants escape, it is a fair inquiry whether the state of the art did or did not permit as a patentable combination the union of *any style* of needle way, cord guide, and nose with the presser arm. There have been needle ways on the arm since (at any rate) Boland (reissue 9,586, February 22, 1878), and I cannot think it invention to place the other adjuncts of sweat band sewing at the only place they would be of service, viz. near the needle way. If I am wrong in thinking that, so far as claim 7 adds to the combination of claim 4, it is invalid, it seems to me clear that the art was in such shape that any combination would have to be restricted to the exact form shown in the application.

Defendants do not use that form, but a separate piece of thin resilient metal, not integral with the block, and thereupon place their guides for band and cord. It is true that merely making in two parts what was designed in one will not avoid the claim under consideration, but, when it is seen that plaintiffs also have commercially used and are using this same plan of construction, I am persuaded that the thin metal, nonintegral construction is a different *thing* from that shown in the patent. It being impossible, as I think, for plaintiffs to lawfully claim monopoly on *all* guides on blocks placed upon presser arms, it is my opinion that defendants do not infringe the seventh claim, even if it is valid at all.

In considering this case, I have felt justified in applying to Knight & Bauer (and defendants stand in their shoes) the same treatment as was awarded to defendant in the recent decision in Brunswick & Co. v. Wolf, 222 Fed. 916, 138 C. C. A. 396. The real defendants here learned what they knew about hat sweat machines from the Gammons, whose name appears frequently in the long list of patents above referred to. Having left the Gammons connection, they have tried to beat a successful Gammons patent. As to claim 4, I do not think they have succeeded, and decree will be entered accordingly, with costs.

Herbert H. Dyke, of Newark, N. J., and John D. Morgan, of New York City, for appellants.

William A. Redding and William B. Greeley, both of New York City, for appellees.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

COXE, Circuit Judge. The plaintiff appellee is a corporation engaged in the manufacture of machines under the Gammons patent granted December 29, 1903, for a machine for sewing sweatbands into hats. The defendants are charged with infringing claim 4 of this patent, which is as follows:

"In a hat-sewing machine, a casing, a feeding wheel, means for vertically adjusting said feeding wheel, an adjustable hat support, a horizontally and vertically movable presser arm provided with a wheel engaging the face of the feeding wheel, a horizontal reciprocating needle, and a needle way above the presser wheel to receive the needle, substantially as set forth."

Judge Hough, while conceding that it was old in the art to sew sweatbands into hats by mechanical means, was of the opinion that

claim 4 disclosed a new combination which contains a vertically adjustable feeding wheel, an adjustable hat support and a vertically and horizontally moving presser arm, together with the other elements as stated in the claim. The machine is so complicated and deals with so many minute parts each performing an important function in the completion of the hat that anything like a minute description of the machine and its operation would accomplish no good result even if it could be done with accuracy. Suffice it to say that the result accomplished by the machine can be seen by the examination of almost any so-called "soft hat," the object being to attach the sweat leather to the hat so that the stitches cannot be observed on the outside of the hat above the brim. The great saving of time over the handmade method will be appreciated when it appears that a dozen hats may be stitched by a skilled operator in six minutes, which includes the placing of the hats in the machine and the removal therefrom; so that a single hat may be stitched in about thirty seconds. A skilled operator can turn out 35 dozen hats per day.

Efforts had previously been made to construct machines to do this work but they were all crude and unsatisfactory attempts which never went into extensive use. Some of the alleged anticipations do not belong to the hat making art at all; others omit important elements, but we are of the opinion that the skilled mechanic with all the defendant's references before him, assuming them to be relevant, could not construct the machine of the Gammon patent. It required the skill of the inventor to do this.

It is unnecessary to add further to what is said in the opinion of the District Judge with whom we agree upon the questions of patentability and infringement.

The decree is affirmed.